IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-02279-PSF-PAC

BONNIE WELLS,

      Plaintiff,

v.

DYNAMIC RESTAURANTS LLC, a Tennessee Limited Liability Company;
d/b/a DYNAMIC MANAGEMENT and d/b/a DENNY'S RESTAURANT,

      Defendants.

---

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

      This matter comes before the Court on defendant's Motion for Summary judgment (Dkt. # 23), filed September 9, 2005.  Together with the motion defendant filed a supporting brief, to which it attached exhibits numbered A-1 through A-6 (Dkt. # 24).  Although defendant did not furnish any kind of index identifying its multiple exhibits, it appears that Exhibit A-2 contains at least 13 subparts numbered 1 through 13, consisting of a mixture of deposition testimony and documents.  On October 5, 2005, defendant filed a revised version of the multiple parts of its Exhibit A-2 (Dkt. # 29), advising that parts of Exhibit A-2 were not legible.  The Court has reviewed the transcripts and documents as they appear in Dkt. # 29.

      On September 28, 2005, plaintiff filed her response in opposition to the motion for summary judgment, together with exhibits numbered 1 through 8, again with no index identifying the exhibits, and with some exhibits containing multiple subparts (Dkt.

# 26).  On October 13, 2005, defendant filed its reply brief in support of its motion, together with additional exhibits numbered A-7 through A-10 (Dkt. # 31).  This case is set for a three-day trial to a jury commencing February 13, 2006.  The matter is now ripe for determination.  The Court finds that a hearing will not materially assist its determination of the motion.

**BACKGROUND**

Plaintiff Bonnie Wells, who describes herself as "an American born, Anglo-Saxon (non-Hispanic), female" (Complaint, ¶ 38) was employed as a server/waitress by Defendant Dynamic Restaurants, LLC, d/b/a/ Denny's Restaurant, at the defendant's outlet in Avon Colorado, until she was terminated on September 18, 2003.  At the time of her termination plaintiff was 45 years of age.  She had been employed at the Denny's location since at least April of 1999.  Complaint, ¶¶ 7-8.

On March 17, 2004, plaintiff filed a discrimination charge with the Colorado Civil Rights Division ("CCRD") (Exhibit 1 to Plaintiff's Opposition at 1).  On the charge form she stated that the discrimination was based on "National Origin/Ancestry, Age (40-69)" that the most recent date of discrimination occurred on September 18, 2003, and that the personal harm consisted of being "discharged" from the position of server/waitress for which she was otherwise qualified, because of her "national origin, American and/or age, 45."  *Id.*

Plaintiff apparently did not wait for the CCRD to conciliate her charge, but instead requested an early notice of right to sue which was issued by CCRD on August

4, 2004 (Exhibit A to Complaint).  Plaintiff filed her complaint in this case on November 1, 2004.

## PLAINTIFF'S COMPLAINT

Plaintiff alleges in numerous paragraphs what she perceives to be a pattern of discrimination and mistreatment of her by Mr. Mike Malone, who became the manager of the Denny's restaurant in Avon sometime after May 2002, when defendant purchased the Avon store.  The complaint sets forth five separate claims for relief ostensibly arising from the alleged conduct of Mr. Malone, or other unnamed supervisors.

Plaintiff alleges in her First and Third Claims that she was subject to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  The Third Claim expressly alleges wrongful termination in violation of the ADEA in that plaintiff's discharge on September 18, 2003 was based on her age.  It is not entirely clear what additional claims plaintiff seeks to make in the First Claim, as she also alleges there that she was "wrongfully terminated." (Complaint, ¶ 35).  The parties have treated this First Claim as a claim for age discrimination arising from the promotion practices of defendant, and certainly plaintiff has alleged that she was not promoted, despite being qualified, because of her age (Complaint, ¶¶ 33-34). Thus the Court will view this First Claim, as do the parties, as a claim for unlawful discrimination in promotion practices based on plaintiff's age.  The Court notes that the First Claim does not otherwise allege discriminatory treatment in the terms and conditions of employment based on plaintiff's age.

Plaintiff alleges in her Second and Fourth Claims that she was subject to discrimination in violation of Title VII due to her "national origin."  Again, the Fourth Claim expressly alleges wrongful termination in violation of Title VII in that plaintiff's discharge on September 18, 2003 was based on her national origin.  The Second Claim, like the First Claim, again repeats the allegation of wrongful termination (Complaint, ¶ 41c).  Unlike the First Claim, however, it also alleges various acts of discrimination in the terms and conditions of plaintiff's employment due to her national origin, including failure to promote (Complaint at ¶ 41a), discriminatory treatment in "table rotation" and "seating assignment" (Complaint at ¶ 41b), and other specific discriminatory treatment (Complaint at ¶ 41d, e and f).

Plaintiff's Fifth Claim for Relief is titled "Hostile Work Environment based on National Origin."  Although plaintiff does not so specify, this appears to be a claim under Title VII in which plaintiff claims she was subject to harassment at work because of her national origin which she here describes as "an Anglo Saxon non Hispanic American born employee." (Complaint, ¶¶ 56, 58).  Plaintiff alleges that the defendant employer was aware of and condoned the harassment based on her national origin. *Id.,* ¶¶ 57, 60.   The Court notes that plaintiff has **not** alleged in her Fifth Claim for Relief, or elsewhere in her complaint, a claim for hostile work environment related to plaintiff's age in violation of the ADEA.

-4-

**DEFENDANT'S MOTION**

For a variety of reasons, defendant moves for summary judgment in its favor on all five of plaintiff's claims for relief.  The Court finds it necessary to address only the following arguments advanced by defendant.

Defendant first argues that all of plaintiff's claims other than for wrongful termination must be dismissed as they were not included in her charge of discrimination filed with the CCRD, conduct characterized by defendant as a "failure to exhaust" administrative remedies.

Defendant next argues that plaintiff cannot establish a *prima facie* case of wrongful termination or hostile work environment based on her national origin.

While apparently conceding that plaintiff has established a *prima facie* case of wrongful termination based on her age, defendant nonetheless argues that plaintiff cannot demonstrate that the employer's articulated legitimate non-discriminatory reason for her termination was a pretext.

Plaintiff contends that there are factual disputes regarding the circumstances under which she was terminated, as well as the treatment while she was still employed, which preclude a grant of summary judgment on any of her five claims.  She further argues that her discrimination charge, even if not specifying wrongs other than discharge, should be read more broadly in light of other documents in the file.

**STANDARD OF REVIEW**

The purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words,

there "must be evidence on which the jury could reasonably find for the plaintiff." *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  F.R.Civ.P. 56(c).  When applying this standard, a court must view the factual record in the light most favorable to the non-movant.  *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

As Defendant's motion sets forth various grounds as to the various claims asserted by plaintiff, this Order separately addresses the defendant's arguments.

**ANALYSIS**

1.      Whether Plaintiff's CCRD Charge Preserved Claims Other Than Wrongful Termination.

In the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit under Title VII.  *See Jones v. Runyon*, 91 F.3d 1398, 1399 and n.1 (10th Cir. 1996).  To exhaust administrative remedies, a Title VII plaintiff generally must present her claims to the EEOC as part of her timely filed EEOC "charge" for which she has received a right-to-sue letter.  *Welsh v. City of Shawnee*, 1999 WL 345597 at *2 (10th Cir., June 1, 1999) and published cases cited therein.  As succinctly explained in the *Welsh* decision:

> The charge "shall be in writing and signed and shall be verified," 29 C.F.R. § 1601.9, and must at a minimum identify the parties and "describe generally the action or practices complained of," *id.* § 1601.12(b).  The charge tells the EEOC what to investigate, provides it with the opportunity to conciliate the claim, and gives the charged party notice of the alleged violation.

*Id.*  The parallel filing requirement of the ADEA, found at 29 U.S.C. § 626(d), has similarly been interpreted as requiring exhaustion of administrative remedies through the EEOC as a prerequisite to filing an age discrimination suit.  *See e.g. Foster v. Ruhrpumpen, Inc.,* 365 F.3d 1191, 1194 n.1 (10th Cir. 2004).

While plaintiff in this case did file a formal charge of discrimination within the time permitted by both statutes, the filed charge describes only plaintiff's discharge from employment on September 18, 2003 as the "personal harm," making no reference to the failure to promote, to other specific acts of discrimination in the terms and conditions of her employment based on national origin, other than generally being "treated differently," or to  harassment based on national origin, which are alleged in the First, Second and Fifth Claims for Relief in plaintiff's complaint.  Plaintiff appears to acknowledge that her formal charge did not reference such other alleged discriminatory acts, and argues instead that the Court should look to a CCRD "intake form" completed by plaintiff on February 16, 2004, as a supplement to her formal charge.[1]  Plaintiff asserts that the grievances on the intake form "reasonably relate" to the civil claims she has filed (Plaintiff's Opposition at 4-5).

---

[1]   The first page is dated February 16, 2004 whereas in the two places plaintiff signed the intake form she dated it 2/16/03.  For a number of reasons it is obvious that the 2004 date was the correct one.

The intake form, attached as pages 3 through 9 of Exhibit 1 to Plaintiff's Opposition, provides a form question no. 6 that permits the employee to select from among, and check off, different types of discriminatory action which an employee claims was taken against him or her.  On the form attached to her brief, it appears that plaintiff made a check mark next to the lines for "discharge," "harassment" "promotion," (next to which is the handwritten insertion "failure to") and "retaliation."  Exhibit 1 to Plaintiff's Opposition at 4.  Form question no. 7 permits the employee to indicate the basis of the discrimination.  On the form attached to her opposition, it appears that plaintiff placed checks next to the lines for "national origin/ancestry," "sex" and "age (40-70)."  *Id.*  A fair reading of the marks placed on form questions 6 and 7 on the intake form would  indicate that the plaintiff, on or about February 16, 2004, referenced discrimination by way of discharge, harassment, failure to promote and retaliation, each or all based on her age, sex, and/or her national origin.

However, the intake form also provides space for a narrative account of the discrimination alleged.  Plaintiff's handwritten description of the reasons she feels she has been discriminated against contains no specifics, or even a mention, of a failure to promote due to her age, or harassment due to her national origin.  *Id*. at 8-9. Moreover, the intake form contains a notice stating in no uncertain terms at the top of the first page:  "THIS FORM IS NOT A CHARGE OF DISCRIMINATION" and "completing this questionnaire does not constitute the filing of a charge."  *Id*. at 6, 7. Thus, plaintiff was certainly put on notice that the intake form would not suffice to meet the statutory requirement of a formal charge.

Notwithstanding plaintiff's argument that this Court should look to the intake form as a supplement to her charge, cases decided in the Tenth Circuit on this very matter are unfavorable to plaintiff's position.  Generally, acts of discrimination listed on an "intake" form, but not preserved in the formal discrimination charge, have found to be not administratively exhausted and therefore may not be the basis for a latter-filed complaint.

In *Atkins v. Southwestern Bell Telephone Company*, 137 Fed. Appx. 115 (10th Cir., June 21, 2005)*,* the facts showed that although an intake form referenced a grievance over retaliation, the plaintiff's formal charge did not include a reference to a retaliation claim, or describe facts that would support such a claim.  The circuit panel held that the omission of such material in the latter-filed charge indicated that plaintiff had abandoned the claim of retaliation.   The Court set forth a two-fold reason for such result, explaining that  "[o]nly the charge is sent to the employer, and therefore only the charge can affect the process of conciliation."  Such an abandonment of a claim is deemed a failure to exhaust administrative remedies.  137 Fed. Appx. at 115 at **3.

The Tenth Circuit's focus on the two-fold function of the charge in providing notice to the employer of what is alleged, and effecting the process of conciliation on what is charged, informs this Court's decision in the instant case.  First, as noted above, the plaintiff here did not await CCRD or EEOC conciliation before filing her complaint, thus there is no indication that conciliation would have included charges of failure to promote, harassment, or discrimination other than the asserted wrongful discharge.

Second, plaintiff argues that despite the content of her formal charge, the employer was put on notice that she was complaining about more than just her alleged wrongful discharge as her counsel had sent a letter dated December 12, 2003 to defendant's corporate office summarizing plaintiff's grievances against defendant, which included harassment, discriminatory working conditions and failure to promote. *See* Exhibit 1 to Plaintiff's Opposition, at 10-11.  However, as the letter was sent more than three months before plaintiff filed her formal charge on March 17, 2004, it is reasonable for the employer to have assumed that the only claims that plaintiff intended to formally pursue were those mentioned in the charge–namely the alleged wrongful termination–and that the other grievances had been abandoned.

A result similar to *Atkins* was reached by the Tenth Circuit in *Welsh, supra*, where the facts reflect that the plaintiff included statements regarding sexual harassment in an "information sheet" filed with the EEOC on June 22, 1995, but did not include such charges in her later-filed formal EEOC charge of July 14, 1995, asserting there only discrimination due to a failure to promote.  *See* 1999 WL 345597 at *4-5. When plaintiff later sought to bring both sets of allegations in a Title VII complaint, the district court found that the two claims were not "reasonably related" and the harassment claims were dismissed for failure to exhaust. 1999 WL 345597 at *2.

On appeal, the Tenth Circuit compared the statements in the "information sheet" with the formal charges, and concluded, as did the district court, that the two sets of allegations were not "reasonably related" for purposes of inclusion in one lawsuit. 1999 WL 345597 at *3.  The Tenth Circuit, explaining its holding, emphasized that:

> the formal charge is the key document in getting the Title VII
> process rolling.  By statute and regulation, it must be in
> writing and signed under oath or affirmation, *see* 42 U.S.C.
> § 2000e-5(b); 29 C.F.R. § 1601.9, and it must describe the
> practices complained of, *see id.* § 1601.12(b).  It therefore
> is the primary, and usually the only, place to which courts
> look to determine whether a plaintiff timely and properly
> exhausted her claims before the EEOC.  Because it is the
> only document that must be sent to the charged party, it is
> the only document that can satisfy the notice requirement.

1999 WL 345597 at *5.

Here too, this Court finds that the allegation in the formal CCRD charge is not "reasonably related" to the intake form.  For example, the intake form is checked at the line indicating discrimination based on "Sex" (gender) while there is no such mention in the formal charge.  The intake form is also checked at the line stating "retaliation" discrimination, yet there is no mention of such in the formal charge.  A comparison of the two documents can reasonably conclude that for whatever reason, plaintiff did not intend to bring all of the grievances she mentioned on the intake form as part of a formal charge against the employer.

Notwithstanding its emphasis on the formal charge, the court in *Welsh* did further examine whether the plaintiff there otherwise manifested her intent to have the harassment allegations be investigated by the EEOC although not mentioned in her formal charge.  *Id.* at *5-6.  The court concluded that she did not express such intention, as the information sheet, although completed only weeks before the formal charge, mentioned entirely different actions than those contained in the formal charge filed several weeks later.  *Id.* at 5.  As the court stated: "the only reasonable view of

-11-

her intent when she filed the formal charge is that she intended to assert only the gender discrimination claim involving McCalip; there is no 'clear' indication [citation omitted] that she also intended to assert the harassment claims involving Land." *Id.* at 5.

Here too, for the reasons stated above, this Court cannot find that plaintiff manifested an intent for the CCRD or EEOC to investigate all the matters on her intake sheet. Although she checked off lines relating to failure to promote, she provided no details of such conduct. Nor did she provide any facts that she was treated differently or harassed due to her national origin. Like the plaintiff in *Welsh*, the plaintiff here completed the CCRD formal charge shortly after completing the intake form. Plaintiff here did not mention on the CCRD charge form the alleged failure to promote, the harassment or the perceived discrimination in the conditions of employment listed on the intake form completed just a few weeks previously.

This Court recognizes that there is a possibility that the formal charge was in fact completed by officials of the CCRD who may have negligently omitted matters plaintiff included on the intake form. However, plaintiff's failure to offer evidence that matters were omitted from the formal charge due to the negligence of the CCRD is fatal to such an argument. *Welsh, supra* at *6.

For these reasons the Court finds that plaintiff has not exhausted her administrative remedies other than with respect to her termination on September 18, 2003. Her claims regarding failure to promote due to age (First Claim) discrimination

in the terms and conditions of employment based on national origin (Second Claim) and harassment due to national origin (Fifth Claim) must be dismissed.

2.    Whether plaintiff has established a *prima facie* case of wrongful termination or on her national origin.

Ordinarily, a plaintiff who lacks direct evidence of discrimination may establish a prima facie case for a discriminatory discharge claim by producing evidence that (1) she belongs to a protected class, (2) she was qualified for the job, (3) despite these qualifications, she was terminated, and (4) the job was not eliminated after her termination. *Perry v. Woodward,* 199 F.3d 1126, 1135 (10th Cir. 1999), *cert. denied*, 529 U.S. 1110 (2000) ; *McDonnell Douglas v. Green* , 411 U.S. 792, 802 (1973). Meeting these requirements gives rise to a rebuttable presumption that, unless the employer's acts are otherwise explained, the employer unlawfully discriminated against the employee. *Perry*, 199 F.3d at 1135. This presumption is based primarily on the fact that the plaintiff is a member of a historically disfavored and statutorily protected group. *Id.* at 1140.

In a reverse discrimination case, however, such as the instant case where plaintiff claims she was wrongfully discharged because she was an "Anglo-Saxon (non-Hispanic female," the Tenth Circuit has modified the first element of the *prima facie* case and, instead of demonstrating that the plaintiff is a member of a protected class, she must instead "establish background circumstances that support an inference that the [employer] is one of those unusual employers who discriminates against the majority. *Mitchell v. City of Wichita, Kansas*, 140 Fed Appx. 767, 777 (10th Cir., July

13, 2005) citing to *Notari v. Denver Water Dep't,* 971 F.2d 585, 589 (10th Cir. 1992) and *Mattioda v. White*, 323 F.3d 1288, 1292 (10th Cir. 2003). Alternatively, the plaintiff may satisfy her burden of establishing a *prima facie* case of reverse discrimination with indirect evidence sufficient to support a reasonable probability that but for her status, the challenged employment decision would have favored the plaintiff. *Mitchell, supra*, at 777. As further described by the decision in *Mitchell*, this analysis does not displace the *McDonnell Douglas* burden-shifting paradigm but simply provides an alternative basis upon which plaintiffs may satisfy their prima facie burden. *Mitchell, supra*, at 777. If the plaintiff establishes a prima facie on either basis, the burden shifts to the defendant to come forward with a legitimate nondiscriminatory reason for its employment related decision. *Id.*

Plaintiff here appears to attempt to argue both methods of demonstrating a *prima facie* case. First, she apparently seeks to demonstrate that Denny's is one of those unusual employers that discriminate against the majority by stating that at the time of her termination she was the only American-born, non-Eastern European, non-Hispanic server employed at the Avon restaurant during the day shift (Plaintiff's Opposition at 26). The Court does not find this fact probative, by itself, as it only addresses how many Americans were employed "during the day shift" by the Avon restaurant specifically, it does not speak to the national origin of the employees at the other thirty-one restaurants operated by defendant, and provides no explanation whatsoever as to why or how such a fact came about, other than asserting it was the result of "reverse

Case 1:04-cv-02279-PSF-PAC    Document 41    Filed 01/13/06    USDC Colorado    Page 15 of 30

discrimination." This evidence makes no showing that defendant is in the practice of firing Anglo, American-born employees based on their national origin.

Alternatively, plaintiff pursues her *prima facie* claim by arguing that there is evidence to support a reasonable probability that but for her status, the termination decision would not have been made in her case. *Id.* at 26. The Court, however, disagrees that the evidence presented by plaintiff is sufficient to support a reasonable inference that but for her status as an "American" or U.S.-born citizen her employment with Denny's would not have been terminated.

Plaintiff contends that her discharge by Denny's for insubordination was based on her national origin, because other Eastern European co-workers also committed insubordination and were not terminated. *Id.* She suggests that this discrepancy in defendant's treatment of insubordination by similarly situated employees is evidence that her termination is the result of her Anglo-American national origin, and not her alleged misconduct. However, the comparison between the treatment of plaintiff's alleged insubordination and the alleged insubordination of her co-workers does not hold up as support for a reasonable "but for" inference.

Although Ms. Wells and the mentioned co-workers were similarly situated employees[2], to show a disparity in their treatment, the acts of misconduct in question need not be identical, but they must be of "comparable seriousness". *EEOC v. Flasher*

---

[2]  Employees are similarly situated if they deal with the same supervisor and are subject to the same evaluation and discipline standards. *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997).

-15-

*Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992) citing *McAlester v. United Air Lines*, 851 F.2d 1249, 1260 (10th Cir. 1988).

It is true, as plaintiff contends, that a Denny's supervisor characterized both the conduct of plaintiff and the conduct of the other workers as "insubordination" (Morgan Depo, Exhibit 4 to Plaintiff's Opposition at 74), but the nature of the respective conduct has not been demonstrated to be of comparable seriousness. In plaintiff's case, the defendant ostensibly found plaintiff to be insubordinate for two instances of interfering with the manner in which the restaurant manager was handling a customer complaint situation, as discussed below.

In contrast, the purported insubordination of the Eastern-European employees involved them speaking Russian in the workplace when they had been asked by their supervisor to speak English. Although Mr. Morgan testified that he had requested the employees to speak English so that he could understand them, speaking a language other than English in the workplace was not a violation of a formal written company policy. Moreover, violations of written policies relating to employee interactions with customers directly relate to the mission of the business. Thus, the Court can accept that an employer would view the co-workers' purported insubordination as a less serious form of insubordination than ostensibly engaged in by plaintiff, possibly warranting less severe treatment.

The Court affords substantial latitude to employers in making discipline related decisions, and is reluctant to "act as a super personnel department that second

guesses employers' business judgments."  *Salguero v. City of Clovis*, 366 F.3d 1168,

1177 (10th Cir. 2004), quoting *Simms v. Oklahoma ex rel. Department of Mental Health*

& *Substance Abuse Servs.*, 165 F.3d 1321, 1330 (10th Cir.), *cert. denied*, 528 U.S. 815 (1999).  Even if defendant were mistaken in its judgment that plaintiff's interference was improper, or was in error that it violated a company policy, "a mistaken belief or motive can be a legitimate reason for an employment decision" and is not necessarily deemed a pretense for discrimination.  *Flasher*, *supra*, 986 F.2d at 1322 n.12.

Plaintiff offers no direct or indirect evidence indicating that the restaurant manager evinced a discriminatory attitude towards her based on the fact that she was Anglo, and not Eastern European.  Therefore, the evidence relating to a perceived disparity in defendant's treatment of insubordination does not supply a basis to reasonably infer that had plaintiff not been of American national origin, she would not have been terminated for the reasons given by the employer.  The plaintiff has failed to come forward with sufficient evidence to support her Fourth Claim for relief and therefore defendant's motion for summary judgment on that must be granted.

3.     <u>Whether plaintiff has demonstrated that defendant's proffered legitimate reason for termination is a pretext for age discrimination</u>.

Under the McDonnell-Douglas burden shifting analysis, in order for plaintiff to establish a *prima facie* case of age discrimination in connection with her termination, she must show that (1) she is within the protected age group; (2) she was performing satisfactory work; (3) she was discharged; and (4) her position was filled by a younger person.  *Rivera v. City and County of Denver,* 365 F.3d 912, 920 (10th Cir. 2004).  Once plaintiff establishes a *prima facie* case the burden shifts to the employer

"to articulate some legitimate, nondiscriminatory reason" for its action.  *Id.*  Should

the defendant carry this burden, in order for plaintiff to avoid summary judgment she

must show by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination, *id.*, or she must otherwise introduce evidence of illegal discriminatory motive. *Beaird v. Seagate Tech.*, 145 F.3d 1159, 1165 (10th Cir. 1998).

Defendant here assumes, for purposes of its motion for summary judgment, that plaintiff can establish a *prima facie* case of age discrimination in connection with the termination of her employment. It argues, instead, that it has presented a legitimate, non-discriminatory reason for its termination of plaintiff (Defendant's Motion at 29). As indicated above, defendant asserts that the legitimate non-discriminatory reasons for plaintiff's termination were "insubordination and violation of a company policy that managers are to handle customer complaints." (*Id.*) According to defendant, the plaintiff on two occasions in August and September 2003, interfered with the manager's handling of a customer complaint situation. This, defendant asserts, was the reason for plaintiff's termination and was unrelated to her age. Defendant asserts that plaintiff admits the conduct that gave rise to her termination.

In response, plaintiff takes issue with some of the factual underpinnings of defendant's explanation. First, she asserts that she did not interrupt the manager's handling of the customer situations, but only after the manager had an opportunity to resolve the complaint did she provide the customer with a toll-free, "1-800" telephone number to register customer complaints, which plaintiff thought was consistent with company policy (Plaintiff's Opposition at 6-7). Second, plaintiff appears to suggest that defendant's expressed reason in September 2003 for her termination was pretextual,

as all she did was provide the customer with the "1-800" number, rather than the telephone number of the district manager Doug Morgan (*id.* at 6-9).  Plaintiff argues that there was no policy in writing or otherwise that directed her to give out only Mr. Morgan's telephone number in cases of customer complaints, as opposed to the toll free number.  Thus, she contends, defendant's explanation that she was terminated for violation of company policy is not legitimate and is pretextual.

For the following reasons, this Court cannot state that defendant has met its burden to establish a legitimate, non-discriminatory reason, or that plaintiff has failed to establish that the reason provided was pretextual.  First, while the defendant asserts that the company had a policy that managers are to handle customer complaints, the defendant has made no showing that the policy is in writing so as to provide employees with a clear statement of the asserted policy.[3]

---

[3]   The Court notes that attached as Exhibit C to plaintiff's complaint is defendant's "Employee Handbook," bearing an effective date of April 30, 2002.  In a subsection titled "Handling Guest Complaints," the handbook does provide that "all complaints must be brought to the Manager's attention immediately.  Your sensitivity to the issue and a sincere apology are essential until the Manager is able to intervene."  Exhibit C to Complaint at 16.

Another version of this handbook, contained in Exhibit A-2, part 6, page 15 to Defendant's Brief, describes the handling of guest complaints in slightly different language: "On the occasion that you should receive a guest complaint, it should be taken seriously. We should listen to the concerns of our guests and offer solutions that would be satisfactory. Because we are committed to gain and keep guests by exceeding their expectations, all complaints must be brought to the Manager's attention immediately.  Your sensitivity to the issue and a sincre apology to our guests are essential until the mnager is able to intervene."

While these provisions expressly require managerial involvement in customer complaint situations, the Court does not read them to require managerial involvement to the exclusion of the employee.  In any event, defendant nowhere cites to these provisions as the "policy" that plaintiff purportedly violated.

Second, the defendant has not been consistent in its identification of the policy plaintiff purportedly violated.  Contemporaneous handwritten memoranda prepared by plaintiff's supervisors at the time of the two incidents referred to above, tend to indicate that their concern in 2003 with plaintiff's conduct was the fact that she provided customers with the 1-800 number, rather than the fact that she interfered while the restaurant manger was handling a customer complaint.  *See* Exhibit A-2 to Defendant's Brief, part 7, p. 10 (handwritten notes of August 29, 2003) and part 8, pp. 1-2 (handwritten notes of September 3, 2003).  Moreover, both memoranda appear to confirm plaintiff's contention that the actions she took, as described in those memoranda, occurred after the manger had already attempted to mollify the customers.

In addition, even if the company did have this curious policy of precluding employees from providing customers with the toll-free, "1-800" customer complaint number (which defendant itself does not expressly argue) there is substantial ambiguity as to whether such policy was reasonably made known to the plaintiff so as to place her on notice that her conduct was insubordinate.  According to the deposition testimony of Mr. Morgan, the district manager, such a policy was not in writing (Exhibit 4 to Plaintiff's Opposition, Morgan Depo., at 27).  Moreover, Mr. Morgan testified that if a guest were still dissatisfied after the manger's intervention, the server could handle the guest's continuing complaint by either directing the guest to him, or apparently by providing the "1-800" toll free number (*id.* at 28-30).  On the other hand, Mr. Morgan also testified that while there may not be a policy against giving out the 1-800 number,

the employees are trained to give out his business card to complaining customers,

although such policy is not in writing.  *Id.* at 30-31.

Based on this evidence of record, including the termination memoranda, the employee handbooks and Morgan's testimony, it is not possible to say at this point whether plaintiff's termination is rooted in a formal or even an informal prohibition of the kind of behavior exhibited by Ms. Wells. "When the existence of a uniform policy or practice is in doubt, it cannot serve as a reason for discharging [plaintiff]." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1040 (7th Cir. 1993). On this record there is substantial uncertainty about the legitimacy of defendant's proffered reason for termination, such that the Court cannot say it has met its burden.

Even if the reasons advanced by defendant were legitimate, the Court would find that plaintiff has nonetheless met her burden to come forward with sufficient evidence to allow a jury to determine the reasons were a pretext. "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1323 (10th Cir. 1997) (internal citations and quotations omitted; emphasis added). As described above, there are apparent inconsistencies and contradictions in the defendant's position such that a reasonable jury could disbelieve defendant's explanation for plaintiff's termination.

Equally dispositive of defendant's position, however, is the direct evidence of ageist comments by her supervisor that plaintiff has otherwise introduced to show an

illegal discriminatory motive.  *See Beaird v. Seagate Tech., Inc., supra*, 145 F.3d

at 1165.  It is true that isolated or ambiguous comments are insufficient to show

discriminatory animus. *Rea v. Martin Marietta Corp.*, 29 F.3d 1450, 1457 (10th Cir.

1994); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir.), *cert. denied*, 531

U.S. 876 (2000).  Rather, a plaintiff must show a nexus between the discriminatory

statements and the decision to terminate her.  *Id.*  One way for a plaintiff to

demonstrate the causal nexus is to show that the ageist comments, rather than

being stray or isolated, were in fact directed at her, or her position, or related to the

defendant's purported policy which resulted in the termination.  *Id.*  "Age-related

comments referring directly to the worker may support an inference of age

discrimination" even though isolated or ambiguous remarks would not.  *Cone v.

Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). The existence of

a nexus between the discriminatory comments made by a defendant's supervisor and

a company's termination decision, allow the jury to infer that age played a role in the

decision-making process.  *Stone*, 210 F.3d at 1140.

In her deposition plaintiff testified to repeated instances when the restaurant

manager, Mike Malone, made ageist comments directly to her such as "hurry up,

grandma," "get along, grandma," "hop to it, grandma," and "creak, creak, creak, creak,"

as if "her body was creaking."  (Exhibit A-2 to Defendant's Motion, Wells Depo., at 65,

95-96;  Exhibit 8 to Plaintiff's Opposition, Wells Depo., at 112).  The  deposition shows

that these alleged ageist comments were unambiguously directed toward plaintiff, and

plainly expressed criticism of plaintiff's performance.  The remarks were not "stray"

or "isolated" according to plaintiff, who testified that Mr. Malone made such ageist

comments to her on a regular basis, including one "grandma" comment that was made approximately 20 to 30 times (Exhibit A-2, Wells Depo., at 96).

The defendant does not deny that such comments were made by Mr. Malone. It offers no affidavit from Malone, or any deposition testimony, disputing plaintiff's testimony or offering any explanation as to why such comments were made.  Defendant makes no effort to justify the comments attributed to Malone other than to state that they were "stray remarks" insufficient to establish a pretext (Defendant's Brief at 35-36). The Court does not agree.  On this state of the record, the repetition and regularity of the ageist comments directed toward plaintiff, coupled with the fact that they directly reference plaintiff's performance of her work, could support a finding by the jury of discriminatory animus on the part of Mr. Malone that is sufficient to demonstrate a nexus between his comments and his decision to fire plaintiff.

For these reasons, genuine issues of disputed material facts remain with respect to plaintiff's claim that her termination violated the ADEA.  Accordingly, defendant's motion is denied as to plaintiff's Third Claim for Relief.

**OTHER MATTERS**

Finally, the Court notes that defendant presents an argument that it is entitled to summary judgment on "Plaintiff's ADEA Harassment Claim." (Defendant's Motion at 36).  Yet, defendant argues that there is no such claim contained in plaintiff's complaint (*id.* at 37).  Plaintiff has responded to the merits of this argument in her opposition brief (Plaintiff's Opposition at 16-24), but provides no indication as to where she alleged such a claim in her complaint.

The Court agrees with defendant that plaintiff has not alleged in her complaint a hostile work environment claim based on age.  The Fifth Claim for Relief expressly states that "[t]he unwelcome harassment was based on Ms. Wells' national origin." (Complaint, ¶ 58).  Thus, plaintiff's complaint supplies no basis for a claim of hostile work environment in violation of the ADEA.

The Court further notes that plaintiff's claims as set forth in the Final Pretrial Order, filed on October 13, 2005 (after the completion of briefing on the summary judgment motion), contain what appears to be a reference a hostile work environment claim in violation of the ADEA (Final Pretrial Order at 3).  Defendant's statement of its defenses denies that it "discriminated against or harassed [her] based on her national origin and/or age." *Id.* at 4.  Defendant also repeats its position that a claim for harassment in violation of ADEA is not contained in plaintiff's complaint, *id.,* but it does not expressly object to plaintiff's inclusion of the claim in her section of the Final Pretrial Order.  Thus, it could be argued that defendant has implicitly consented to an amendment to plaintiff's pleadings pursuant to Section 12 of the Pretrial Order, which provides that the effect of the order is to control the subsequent action of the trial.

The Court will not accept such a backhanded amendment of the complaint without even a motion to amend that pleading as required by F.R.Civ.P. 15.  Moreover, even if plaintiff had pled a claim for the creation of a hostile work environment based on plaintiff's age, or if such a pleading amendment had been granted, the Court finds that such claim would be subject to dismissal for failure to exhaust administrative remedies.

-28-

The Court finds no reference in plaintiff's CCRD charge to such a claim.  Therefore, for the reasons set forth above, such claim, even if implicitly pled by plaintiff, is dismissed.

**CONCLUSION**

For the reasons set forth above, defendant's motion for summary judgment is GRANTED in part and DENIED in part.  The motion is GRANTED as to the First, Second, Fourth and Fifth Claims for Relief, and those claims are DISMISSED with prejudice.  The motion is denied as to the Third Claim for Relief, alleging termination in violation of the ADEA.  The case will proceed to trial on the Third Claim for Relief.

DATED: January 13, 2006

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge